RRM
1/28/19




FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 FEB 28   PM 4: 23

CLERK'S OFFICE
AT BALTIMORE

BY [signature] DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Judson T. Mihok
Assistant United States Attorney
Judson.Mihok@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4803
MAIN: 410-209-4800
FAX: 410-962-0716

January 25, 2019

Mr. Oleg Fastovsky, Esq.
5850 Waterloo Road, Suite 140
Columbia, MD 21045

Re:   United States v. Marina Gelfen, Crim. No.   RDB 19-069

Dear Mr. Fastovsky:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by close of business on February 8, 2019, it will be deemed withdrawn. The terms of the agreement are as follows:

## Offenses of Conviction

1.   The Defendant agrees to plead guilty to Count One of the Information pending against her in Criminal Number RDB 19-069, which charges her with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. The Defendant admits that she is, in fact, guilty of this offense and will so advise the Court.

## Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the dates listed in the Information, in Maryland and elsewhere:

First, that two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the information, and the elements of which are set forth below; and

Second, the defendant knew the unlawful purpose of the plan and willfully joined in it.

Elements of Wire Fraud: That the defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises or willfully participated in such a scheme with knowledge of its fraudulent nature; that the defendant acted with the intent to defraud; and that in advancing, furthering, or carrying out the scheme, the

defendant transmitted, or caused the transmission of, any writing, signal, or sound by means of a wire communication in interstate commerce.

## Penalties

3.     The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Mandatory Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| One | 18 U.S.C. § 1349 | N/A | 20 years | 3 years | $250,000 | $100 |

a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259.

d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

2

## Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      The Defendant has the right to have her case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against her. By agreeing to proceed by way of Information, she is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

b.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

c.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

e.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

f.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

3

h.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

i.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

a.     The base offense level for Conspiracy to Commit Wire Fraud is 7 pursuant to USSG §2B1.1(a)(1).

b.     Because the loss exceeded $95,000, but was less than $150,000, the offense level is increased by 8. USSG §2B1.1(b)(1)(E). (Subtotal: 15).

c.     Because the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, there is an increase of 2 levels. USSG §2B1.1(b)(4). (Subtotal: 17).

7.     This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's

4

intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

        8.     The final adjusted advisory base offense level is projected to be fourteen (**14**).

        9.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

        10.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Obligations of the Parties

        11.    At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

        12.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statutes to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statutes, to the extent that such challenges legally can be waived.

        b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the

Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

                i.      The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

                ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

                c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

13.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses. Specifically, the Court will order the forfeiture of all property constituting, derived from, or traceable to the gross proceeds obtained directly or indirectly as a result of this offense.

14.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

15.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement,

and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

18.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under USSG §3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

19.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea-even if made pursuant to Rule 11(c)(1)(C)-if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

20.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Restitution

21.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. On or before the sentencing hearing date, the Defendant will pay the full amount of restitution, which the parties agree is

**$96,407.15**. The Defendant further agrees that she will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

Entire Agreement

22.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____

Judson T. Mihok
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/11/2019
Date

Marina Gelfen
Marina Gelfen

I am Marina Gelfen's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its

8

terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

2-11-19
Date

Oleg Fastovsky, Esq.

## ATTACHMENT A - Statement of Facts

*The United States and Defendant Noel Eric Anshel stipulate and agree that the following facts are true, and that the United States would have proven them beyond a reasonable doubt had his case proceeded to trial. They further stipulate and agree that these are not all of the facts that the United States would have proven had this matter gone to trial:*

Marina Gelfen ("GELFEN"), age 55, is a resident of Reisterstown, Maryland. From 2000 to July of 2018, GELFEN was the owner and manager of Chesapeake Pawn Brokers ("Chesapeake Pawn"), a pawnshop located at 2012 Pulaski Highway, Edgewood, MD 21040.

David Gutman ("GUTMAN"), age 55, is a resident of Baltimore, Maryland. From 2013 to June of 2017, GUTMAN worked at Chesapeake Pawn.

Dmitry Babich ("BABICH"), age 48, is a resident of Owings Mills, Maryland. From April of 2017 to present, BABICH has been the owner and manager of Chesapeake Pawn.

Chesapeake Pawn is a licensed pawn broker business in Harford County. As such, all items that are sold to Chesapeake Pawn are required to be entered into the Regional Automated Property Information Database (RAPID) within 24 hours of the purchase date. RAPID is a Law Enforcement tool used for tracking transactions conducted by pawn brokers in an effort to guard against sale of, and aid in the recovery of, stolen merchandise.

eBay is an American multinational internet consumer-to-consumer corporation, headquartered in San Jose, California. eBay manages ebay.com, an online auction and shopping website in which people and businesses buy and sell a broad variety of goods and services worldwide. eBay's terms of service clearly prohibit the sale of stolen merchandise. See Stolen Property Policy, eBay ("Stolen property policy overview: The sale of stolen property violates state, federal, and international law, and we notify law enforcement of any attempts to sell stolen property on our site. We also support the investigation and prosecution of sellers who violate this policy. Make sure your listing follows these guidelines. If it doesn't, it may be removed, and you may be subject to a range of other actions, including limits of your buying and selling privileges and suspension of your account.")

Payment for the products are made electronically. The seller is responsible for shipping the product to the buyer. An eBay account is required to sell or buy on eBay. In the United States, sellers are required to accept PayPal or to have a merchant credit card account. eBay has data centers in Utah, Arizona, and Nevada. Information is passed through all of eBay's servers to form a fluid communication between all servers to ensure information and communication continuity. eBay transactions conducted in Maryland cause wires to travel in interstate commerce.

PayPal is an international e-commerce business that allows payments and online money transfers to be made through the Internet. PayPal's services allow account holders to make financial transactions online by granting the ability to transfer funds electronically between individuals and businesses. PayPal operates data centers in Arizona and California. Payments processed through PayPal in Maryland cause wires to travel in interstate commerce.

1

A transaction involving eBay with payment processed by PayPal generally proceeds in six steps: (1) a buyer orders an item from eBay; (2) the buyer enters payment information; (3) the authorization request is sent to PayPal, and PayPal then sends the request of funds to the financial institution; (4) the financial institution then sends funds to PayPal; (5) funds are captured by PayPal when the payment is made by the financial institution; and (6) PayPal informs eBay that the funds have been captured, and releases the seller to ship the item.

United Parcel Service (UPS), headquartered in Atlanta, Georgia, is an American multinational package delivery and supply chain management company that provides definite time delivery of packages and documents worldwide. Individuals and businesses can maintain an account with UPS that allows a person or business to access shipping and tracking, obtain discounted shipping rates and manage the accounts cash flow. In order to sign up for a UPS account, a business must provide a name, address, email and user ID, and UPS will then assign the business an account number that is specific and unique to the business.

The Home Depot, headquartered in Atlanta, Georgia, is a home improvement retail store which sells building materials and home improvement products in more than 2,200 warehouse style stores in the United States, Canada and Mexico. The Home Depot offers more than one million products for sale in-store and online, to include products manufactured and sold exclusively by The Home Depot, such as Makita, Ryobi, and Ridgid brand power tools.

Beginning no later than January 1, 2015, and continuing through July of 2018, GELFEN paid cash to "boosters," a common term for shoplifters, in exchange for merchandise stolen from Home Depot. These products include exclusive brands sold only through the Home Depot, such as Makita, Ryobi, Ridgid, and other brand power tools, to include drills, wrenches, saws, and lithium batteries. The products were frequently new and still in the original store box.

GELFEN bought these items knowing that the boosters stole them directly from Home Depot. GELFEN would purchase these items from boosters at Chesapeake Pawn, at far less than their retail value. GELFEN paid boosters over $70,000 for stolen product. GELFEN would list and sell the stolen items on eBay under at least eleven different eBay user names, including the names of relatives and associates, in an effort to conceal the high volume of transactions. From January of 2015 through May 2018, those eBay accounts recorded over $1.5 million in sales. In addition, GELFEN would advertise much of the merchandise that GELFEN bought from boosters on eBay as "NEW," "Brand New," and "Sealed."

Most of the items were sold to people residing outside the State of Maryland. GELFEN would ship the items to them via the United States Postal Service and other commercial carriers. She would receive payments for these items via PayPal.

On May 19, 2015, Harford County Sheriff's Office ("HCSO") Det. Blubaugh performed a RAPID database check of Chesapeake Pawn, and noted some potential issues with transactions not being properly entered. Shortly thereafter, Det. Blubaugh responded to Chesapeake Pawn and spoke with GELFEN. While Det. Blubaugh was at Chesapeake Pawn, he observed GELFEN covering some items up on a shelving unit. Det. Blubaugh asked GELFEN, "What are you hiding?" GELFEN said, "Nothing, I swear to God." Det. Blubaugh asked GELFEN to step aside so he could see what she was moving, but GELFEN refused, and stated, "I'm sorry I'm sorry." Det. Blubaugh advised GELFEN to step aside because she was obstructing and hindering an investigation.

2

GELFEN stated, "I'm sorry, I didn't do anything. Det. Blubaugh you know I will cooperate with you. I'm sorry." GELFEN then moved out of the way, and Det. Blubaugh located undocumented batteries. Det. Blubaugh asked, "Why did you hide these?" GELFEN stated, "I'm sorry Detective. I didn't know they were there." The batteries were seized by HCSO.

On May 20, 2015, Det. Blubaugh responded to Chesapeake Pawn for a more detailed inspection of inventory. Det. Blubaugh discovered and seized approximately $7,000 worth of merchandise and accessories that appeared to be new which GELFEN could not provide documentation for or an explanation of how these items had been acquired. No monetary transactions or transaction numbers were documented or generated in RAPID on the above merchandise.

On January 14, 2016, a HCSO undercover police officer ("U/C") was provided with two items proprietary to Home Depot: one Ridgid 18v Hammer Drill; and one Makita Reciprocating Saw, for sale at Chesapeake Pawn. A Home Depot security device, commonly known as "spider wrap," was secured to the outside of the Ridgid box, clearly indicating the merchandise was stolen or otherwise obtained unlawfully. Prior to the sale, the U/C was outfitted with audio and video recording equipment which was monitored by law enforcement during the controlled sale. The U/C entered Chesapeake Pawn with the items and greeted David GUTMAN. After a brief exchange, the U/C stated, "I stole two of these and kept one for myself." GUTMAN replied by saying, "How much you trying to get for this stuff?" The U/C then stated, "The price on the shelf for this one was like $150 and this one like $100." Following the initial interaction, Marina GELFEN recognized the security device around the Ridgid box and stated, "I don't take those, that's from the store." The U/C stated, "Do you want me to go take it off and come back?" GELFEN responded, "Not in my store and not in my parking lot." GELFEN then spoke with GUTMAN in Russian and GUTMAN asked the U/C, "So, do you want to take it off?" The U/C stated, "I'll go outside and take it off then I'll come back in." The U/C then attempted to take both items outside when GUTMAN told him that he could "leave this one here," referring to the Makita package. The U/C left the store with the Ridgid, removed the spider wrap outside the store, went back inside the store, and told GUTMAN, "All better." GUTMAN then asked again, "How much?" The U/C then replied, "Think you can do $100 for both?" GUTMAN nodded his head in agreement with the price. GUTMAN then turned to GELFEN and read the items description to her along with the item identification numbers. GUTMAN then asked the U/C, "Why is the condition like this?" The U/C stated, "You can check it, I grabbed it off the shelf like that." After the price was negotiated and completed, GELFEN retrieved the U/C's identification and entered the items into the computer. Following the transaction, GELFEN handed the U/C $60 for the items.

After reviewing eBay records, the following transactions were noted: (1) on 6/13/16, bestdeal1963 (David Gutman) sold a like item "Makita XRJ01Z 18-Volt LXT Lithium-Ion Cordless Compact Reciprocating Saw SEALED" (eBay item # 262473686241) IP 71.166.99.229 to S.G. in Michigan; and (2) on 7/9/16, bt101995bt (Marina GELFEN'S son) sold a like item "Ridgid R8611502K X4 18V Hyper Lithium-Ion Cordless Hammer Drill Driver Kit NEW" (eBay item # 282095571342) IP 71.166.105.197 to C.K. in Oregon.

On May 25 2017, the U/C brought three brand new items proprietary to Home Depot to Chesapeake Pawn: one Milwaukee Impact Wrench; and two single-pack RIDGID 18 volt batteries. Again, the transaction was audio and video recorded. The U/C entered Chesapeake Pawn with the items and greeted GELFEN and BABICH. GELFEN asked how much for the items. The U/C said,

3

"The sign on the shelf said $170-$140, and the batteries are $70 each," then asked, "$100 for everything." GELFEN asked for U/C's ID. The U/C gave BABICH the ID, then asked, "Is this decent stuff? That was the easiest stuff for me to grab." GELFEN stated, "I don't know I will check the prices." GELFEN asked the U/C, "is $80 ok" and the U/C said, "That will do." GELFEN paid the U/C $80, then the U/C asked, "Is there anything you guys are short on, looking for anything in particular? I will make another trip down to the store today." GELFEN said, "No, nothing in particular." These items were properly placed into the RAPID system.

After reviewing eBay records, the following sale was observed: (1) on 9/13/17 bt101995bt (Marina GELFEN'S son) sold a like item "MILWAUKEE 2663-20 18-Volt M18 ½-Inch High Torque Impact Wrench Bare Tool NEW" (eBay item # 282651794326) IP 98.233.69.189 to C.V. in New Jersey.

On June 15, 2017, the U/C brought three brand new items proprietary to Home Depot to Chesapeake Pawn: one Milwaukee 18 volt battery model 48-11-1850; one Makita 18 volt battery Model BL 1830; and one RIGID 18 volt battery model AC840087. Again, the transaction was audio and video recorded. The U/C entered the TARGET LOCATION with the items and greeted GELFEN and BABICH. GELFEN asked, "How much?" The U/C said, "The sign said $100, $100 and $130." The U/C then asked for, "$100 for everything." GELFEN said, "I don't know I will have to check." GELFEN returned and said, "$60 is the best that I can do." The U/C said, "Ok". BABICH got the U/C's ID and finished the transaction. The U/C asked BABICH, "Anything else that you need? I can boost anything you need!" BABICH said, "Anything." These items were properly placed in the RAPID system.

After reviewing eBay records, the following sale was observed: on 9/1/17 gabrielle2685 (David GUTMAN'S daughter) sold a like item "2Makita 18v Batteries Battery BL 1830 & BL 1815 SEALD FREE SHIPPING" (eBay item # 172848115302) IP 98.233.69.186 to J.C.S-C in Florida.

In the course of the scheme, individuals repeatedly stole items from retail establishments and sold them to GELFEN, GUTMAN, and BABICH. GELFEN received the largest share of the proceeds from the scheme. GELFEN, GUTMAN, and BABICH also organized the sale of the items on eBay and the shipment of the items to buyers located outside the State of Maryland. Listing and selling merchandise the seller knows to be stolen defrauded both eBay, since the sale of knowingly stolen merchandise violates eBay's policy, and also the consumers who utilize eBay relying on eBay's policies and that the sellers are in compliance therewith. The scheme GELFEN, GUTMAN, and BABICH devised, including listing of the stolen merchandise for sale on eBay, the processing of financial transactions through PayPal, and the transfer of money between financial institutions, transmitted and caused to be transmitted wire communications in interstate commerce consisting of any writings, signs, signals, pictures, and/or sounds for the purpose of executing the scheme to defraud.

The parties agree that a reasonable estimate of the loss to Home Depot from the scheme, that is, the retail value of the merchandise for which GELFEN is responsible was $96,407.15.

I have reviewed this Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it.

2/11/2019
Date

*Marina Gelfen*
Marina Gelfen


I am Marina Gelfen's attorney.   I have carefully reviewed every part of this Statement of Facts with her. To my knowledge, her decision to sign is an informed and voluntary one.

2-11-19
Date

Oleg Kastovsky, Esq.

5